## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| GRACE MARIE SANTIAGO RIVERA, on her own behalf and as mother and legal guardian of her minor child, G.M.M.S.; GREGORIO SANTIAGO CRUZ; | CIVIL NO.: |
| *Plaintiffs,* | |
| Vs, | RE: Torts; Medical Malpractice; Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. §1395 dd, et. seq. |
| METRO PAVÍA HEALTH SYSTEM, INC., **d/b/a** HOSPITAL PAVÍA ARECIBO; DR. RAFAEL A. JIMENEZ MENDEZ, **his wife** JANE DOE AND THE CONJUGAL PARTNERSHIP FORMED BY THEM; DR. EFRAIN PADILLA ROSA, **his wife** AVERAGE JANE AND THE CONJUGAL PARTNERSHIP FORMED BY THEM; DR. JAIME RODRIGUEZ QUINQUILLA, **his wife** JANE ROE AND THE CONJUGAL PARTNERSHIP FORMED BY THEM; EMERGENCY ROOM CORPORATION "XYZ"; AMBULANCE SERVICE "ABC"; AMBULANCE SERVICE "XYZ"; INSURANCE COMPANY "A"; INSURANCE COMPANY "B"; INSURANCE COMPANY "C"; INSURANCE COMPANY "D"; INSURANCE COMPANY "E"; INSURANCE COMPANY "F"; INSURANCE COMPANY "G" JOHN DOE; UNNAMED DEFENDANT; XYZ INSURER; | PLAINTIFFS DEMAND TRIAL BY JURY |
| *Defendants.* | |

## COMPLAINT

**TO THE HONORABLE COURT**:

APPEAR NOW Plaintiffs, **GRACE M. SANTIAGO RIVERA,** in her own capacity and

on behalf of her minor child **G.M.M.S.**, and **GREGORIO SANTIAGO CRUZ**, through the undersigned attorney, and respectfully **STATE**, **ALLEGE**, and **PRAY**:

## I. <u>NATURE OF THE ACTION</u>

This is a civil action against a hospital which participates in the federal Medicare program and operates an Emergency Room for violation of the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. §1395 dd et seq., and also a torts liability action for medical malpractice in which Plaintiffs request redress for physical and emotional injuries and damages sustained by them as a result of the negligence committed by the Defendants and/or employees of the Defendants.

On October 19th, 2016, at approximately 9:00 a.m., Grace M. Santiago Rivera (hereinafter referred to as "Grace") noted that her daughter, G.M.M.S., twelve (12) years old at that time and with an history of epilepsy, hypoxic encephalitis and enteral feeding per gastrotomy, had pulled out her feeding tube. G.M.M.S. is dependent on this gastrotomy to receive food and medicines. Immediately after realizing that her daughter had pulled the feeding tube, Grace called an ambulance using the emergency number 9-1-1. The ambulance arrived and transported G.M.M.S. to the emergency room of Hospital Pavía Arecibo.

Once in Hospital Pavia Arecibo, G.M.M.S. was received and evaluated by Dr. Rafael A. Jiménez Méndez ("Dr. Jimenez") and Dr. Efrain Padilla Rosa ("Padilla"). They negligently repositioned the gastrotomy, using the same feeding tube that G.M.M.S. had pulled out hours before, because the hospital and the emergency room didn't have any new feeding tube of the correct size for the patient. After administering antibiotics to G.M.M.S., she was discharged from the hospital and sent back home.

That night, Grace realized that G.M.M.S.'s abdomen was red, hot and swollen. Grace halted

immediately the administration of food and medicines through the feeding tube and called again 9-1-1. After a first failed attempt in which the paramedics decided that G.M.M.S.'s vital signs were good and that it was not necessary to take her to the emergency room, the child was transported to the emergency room at Hospital Pavia Arecibo by a different ambulance service. She arrived at Hospital Pavia Arecibo at 12:20 a.m. on October 20th, 2016. In the emergency room, G.M.M.S. was received and evaluated by Dr. Jaime Rodriguez Quinquilla ("Dr. Rodriguez"). An abdominal X-Ray revealed that the gastrotomy tube was in the mid upper abdomen and that it was not working. Dr. Rodriguez decided to transfer the patient to a different hospital. G.M.M.S. was transferred to the Pediatric Hospital in Centro Medico at 8:20 a.m., more than nine (9) hours after she arrived at the emergency room. Dr. Rodriguez and the medical staff at the Hospital Pavia Arecibo did not stabilize the patient before her transfer to the Pediatric Hospital. She was in septic shock when she arrived at Centro Medico.

The facts alleged herein give rise to a claim against Metro Pavia Health System, Inc., d/b/a Hospital Pavia Arecibo, for violations of the Emergency Medical Treatment and Active Labor Act (EMTALA), above-cited, for transferring a patient to a different hospital without the patient being first properly stabilized, and also give rise to a tort claim for which all Defendants are jointly and severally liable under articles 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §5141 and §5142.      The evidence in this case shows that G.M.M.S. was subject to negligent medical treatment which resulted in a situation where her life was under a direct mortal threat. The Defendants' lack of adequate care in the treatment of G.M.M.S, and/or the professional malpractice attributable to Dr. Jimenez, Dr. Padilla, Dr. Rodriguez, Hospital Pavia Arecibo healthcare staff and of the ambulance service that transported G.M.M.S. to the Pediatric Hospital at Centro Medico, which nearly resulted in her death, have caused her, her mother Grace and her

grandfather, Gregorio Santiago Cruz, intense physical and mental anguish and emotional distress.

## II. JURISDICTION AND VENUE

1.      This Honorable Court has jurisdiction to hear this action pursuant to 28 U.S.C. §1331, since the case at bar is a civil action arising under the Constitution, laws or treaties of the United States.

2.      This Honorable Court has supplemental jurisdiction to hear state law claims included herein pursuant to 28 U.S.C. §1367.

3.      Venue is proper in the District of Puerto Rico pursuant to 28 U.S.C. §1391, since the events that give rise to this cause of action occurred in the District of Puerto Rico.

## III. PARTIES

4.      Plaintiff **GRACE MARIE SANTIAGO RIVERA** ("Grace") is of legal age, single, and a resident of Arecibo, Puerto Rico.  Her address is: Carr. 682, Km. 9.7, Barrio Factor #2, Arecibo, Puerto Rico, 00612. Her telephone number is (787) 972-3873 and her email address is irismrp05@gmail.com. Grace is the mother and legal guardian of her minor child **G.M.M.S.**

5.      Plaintiff **G.M.M.S.**, is a minor, single and lives with her mother and legal guardian in Arecibo, Puerto Rico. Her address is: Carr. 682, Km. 9.7, Barrio Factor #2, Arecibo, Puerto Rico, 00612. Her telephone number is (787) 972-3873 and her email address is irismrp05@gmail.com. The negligent acts and omissions of the Defendants caused great harm to **G.M.M.S.**, to the point that her life was put at risk. In addition, the negligent transfer made by Defendant Hospital Pavia Arecibo, without stabilizing the patient, is a violation of the Emergency Medical Treatment and Active Labor Act (EMTALA).

6.      Plaintiff **GREGORIO SANTIAGO CRUZ** ("Gregorio"), is of legal age, single, and resident in Arecibo, Puerto Rico. His address is: Carr. 682, Km. 9.7, Barrio Factor #2, Arecibo,

Puerto Rico, 00612. His phone number is (787) 972-3873. Gregorio is the grandfather of G.M.M.S. They live together, and Gregorio takes care of his granddaughter every day. He has suffered greatly with all this situation.

7.      Defendant **METRO PAVIA HEALTH SYSTEM, INC.,** d/b/a Hospital Pavia Arecibo (hereinafter referred to as "Pavia Arecibo"), is a domestic corporation organized under the laws of the Commonwealth of Puerto Rico and authorized to conduct business in the island. Its known physical address is: Carr. 129, Ave. San Luis, Arecibo, PR 00613. Its known postal address is PO Box 659, Arecibo, PR 00613-0659. Its phone number is (787) 650-7272. Pavia Arecibo is liable to all the Plaintiffs for (a) violating EMTALA and (b) because of the negligent acts or omissions of its employees, agents or physicians with privileges in that hospital that caused harm and physical and emotional damages to the Plaintiffs.

8.      Defendant **DR. EFRAIN PADILLA ROSA** (hereinafter referred to as "Dr. Padilla"), is of legal age, medical doctor with specialty in pediatrics and married to **AVERAGE JANE**, with whom he conforms the **CONJUGAL PARTNERSHIP PADILLA-JANE**. His last known address is Calle Hernandez Huertas #105, Arecibo, PR 00612. His phone number is: (787) 878-6541. Dr. Padilla and his Conjugal Partnership are liable to Plaintiffs because Dr. Padilla's lack of care and negligent acts or omissions that caused harm and physical and emotional damages to the Plaintiffs. In particular, Dr. Padilla and Dr. Jimenez negligently repositioned the gastrotomy to G.M.M.S., without due care and provoking that the tube entered the mid upper abdomen, thus causing physical damages to the minor.

9.      Defendant **AVERAGE JANE**, is of legal age, employee, and married to Dr. Padilla, with whom she forms the **CONJUGAL PARTNERSHIP PADILLA-JANE**. Her last known address is Calle Hernandez Huertas #105, Arecibo, PR 00612. Her phone number is: (787)

878-6541. Her name will be substituted after the discovery process.

10.      Defendant **DR. RAFAEL A. JIMENEZ MENDEZ** (hereinafter referred to as "Dr. Jimenez"), is of legal age, medical doctor and married to **JANE DOE**, with whom he forms the **CONJUGAL PARTNERSHIP JIMENEZ-DOE**. His last known address is Calle Iguina #55, Camuy, PR 00627. His known phone number is: (787) 898-5859. Dr. Jimenez and his Conjugal Partnership are liable to Plaintiffs because Dr. Jimenez's lack of care and negligent acts or omissions caused harm and physical and emotional damages to the Plaintiffs. In particular, Dr. Jimenez and Dr. Padilla negligently repositioned the gastrotomy to G.M.M.S., without due care and provoking that the tube entered the mid upper abdomen, thus causing physical damages to the minor.

11.      Defendant **JANE DOE**, is of legal age, employee, and married to Dr. Jimenez, with whom she conforms the **CONJUGAL PARTNERSHIP JIMENEZ-DOE**. Her last known address is Calle Iguina #55, Camuy, PR 00627. Her known phone number is: (787) 898-5859. Her name will be substituted after the discovery process.

12.      Defendant **DR. JAIME RODRIGUEZ QUINQUILLA** (hereinafter referred to as "Dr. Rodriguez"), is of legal age, medical doctor and married to **JANE ROE**, with whom he forms the **CONJUGAL PARTNERSHIP RODRIGUEZ-ROE**. His last known addresses are: 62-B Jose Julian Acosta, Vega Baja, PR 00693; 3 Calle Luis Muñoz Rivera, Vega Alta, PR 00692. His known phone numbers are: (787) 855-5336; (787) 883-7645. Dr. Rodriguez and his Conjugal Partnership are liable to Plaintiffs because Dr. Rodriguez's lack of care and negligent acts or omissions caused harm and physical and emotional damages to the Plaintiffs. In particular, he (a) negligently waited more than eight (8) hours to transfer a critically ill patient to a different hospital and (b) transferred a pediatric patient who was not adequately stabilized causing her to develop

septic shock.

13.     Defendant **JANE ROE**, is of legal age, employee, and married to Dr. Rodriguez, with whom she forms the **CONJUGAL PARTNERSHIP RODRIGUEZ-ROE**. Her name will be substituted after the discovery process.

14.     Defendant **EMERGENCY ROOM CORPORATION XYZ**, is a domestic corporation organized under the laws of the Commonwealth of Puerto Rico and authorized to conduct business in the island. Its physical and postal address, as well as its phone number, is currently not known. The correct name of **EMERGENCY ROOM CORPORATION XYZ** will be substituted after the discovery process.  This corporation is liable to Plaintiffs because it is believed that Dr. Padilla, Dr. Jimenez and Dr. Rodriguez were all employees of that corporation. In addition, it is believed that all or some of the nurses, paramedics or medical staff that evaluated and/or provided medical services to G.M.M.S. during her stay at the emergency room of Pavia Arecibo were employees or agents of this corporation.

15.     Defendant **AMBULANCE SERVICE ABC** is a domestic corporation organized under the laws of the Commonwealth of Puerto Rico and authorized to conduct business in the island. Its physical and postal address, as well as its phone number, is currently not known. The correct name of **AMBULANCE SERVICE ABC** will be substituted accordingly after the discovery process.  This corporation is liable to Plaintiffs because its employees accepted and transferred a pediatric patient who was critically ill and who was not properly stabilized prior to be transferred as it is required by EMTALA.

16.     Defendant **AMBULANCE SERVICE XYZ** is a domestic corporation organized under the laws of the Commonwealth of Puerto Rico and authorized to conduct business in the island. Its physical and postal address, as well as its phone number, is currently not known. The

7

correct name of **AMBULANCE SERVICE XYZ** will be substituted after the discovery process. This corporation is liable to Plaintiffs because its employees negligently refused to accept and transport G.M.M.S. to the hospital, despite her being in urgent need of medical attention.

17.   Defendants **INSURANCE COMPANIES "A", "B" AND "C"**, are domestic corporations organized under the laws of the Commonwealth of Puerto Rico and authorized to conduct business in that island. Their physical and postal address, as well as their phone number, is currently not known. The correct name of **INSURANCE COMPANIES "A", "B" AND "C"** will be substituted accordingly after the discovery process. Insurance Companies "A", "B" and "C" are liable to Plaintiffs since they issued a valid insurance contract to Dr. Padilla, Dr. Jimenez and Dr. Rodriguez, respectively, which covers their liability for negligent acts and omissions related to their profession as medical doctors. The correct names of **INSURANCE COMPANIES "A", "B" AND "C"** will be substituted accordingly after the discovery process. Under Puerto Rico´s law, insurance companies can be sued directly, under the "direct action" provision. _See_ 26 LPRA sec. 2003, et seq.

18.   Defendant **INSURANCE COMPANY "D"** is a domestic corporation organized under the laws of the Commonwealth of Puerto Rico and authorized to conduct business in that island. Its physical and postal address, as well as its phone number, is currently not known. The correct name of **INSURANCE COMPANY "D"** will be substituted accordingly after the discovery process. Insurance Company "D" is liable to Plaintiffs since it issued a valid insurance contract to Pavia Arecibo or Metro Pavia Health System, which covers their liability for negligent acts and omissions related to their business as a hospital. Under Puerto Rico´s law, this insurance company can be sued directly, under the "direct action" provision. _See_ 26 LPRA sec. 2003, et seq.

19.   Defendants **INSURANCE COMPANY "E"** is a domestic corporation organized

under the laws of the Commonwealth of Puerto Rico and authorized to conduct business in that island. Its physical and postal address, as well as its phone number, is currently not known. The correct name of **INSURANCE COMPANY "E"** will be substituted accordingly after the discovery process. Insurance Company "E" is liable to Plaintiffs since it issued a valid insurance contract to **AMBULANCE SERVICE ABC**, which covers its liability for negligent acts and omissions related to their business as an ambulance services corporation. Under Puerto Rico´s law, this insurance company can be sued directly, under the "direct action" provision. _See_ 26 LPRA sec. 2003, et seq.

20.    Defendants **INSURANCE COMPANY "F"** is a domestic corporation organized under the laws of the Commonwealth of Puerto Rico and authorized to conduct business in that island. Its physical and postal address, as well as its phone number, is currently not known. The correct name of **INSURANCE COMPANY "F"** will be substituted accordingly during the discovery process. Insurance Company "E" is liable to Plaintiffs since they issued a valid insurance contract to **EMERGENCY ROOM CORPORATION XYZ**, which covers its liability for negligent acts and omissions related to their business as an emergency room service provider. Under Puerto Rico´s law, this insurance company can be sued directly, under the "direct action" provision. _See_ 26 LPRA sec. 2003, et seq.

21.    Defendants **INSURANCE COMPANY "G"** is a domestic corporation organized under the laws of the Commonwealth of Puerto Rico and authorized to conduct business in that island. Its physical and postal address, as well as its phone number, is currently not known. The correct name of **INSURANCE COMPANY "G"** will be substituted accordingly during the discovery process. Insurance Company "G" is liable to Plaintiffs since they issued a valid insurance contract to **AMBULANCE SERVICE XYZ**, which covers its liability for negligent

acts and omissions related to their business as an ambulance service provider. Under Puerto Rico´s law, this insurance company can be sued directly, under the "direct action" provision. *See* 26 LPRA sec. 2003, et seq.

22.     Defendant **JOHN DOE** is a physician, of legal age, married, and a resident of the Commonwealth of Puerto Rico. He and his spouse, **UNNAMED DEFENDANT,** form a conjugal partnership. Information regarding address and telephone number are currently unknown. The name **JOHN DOE** shall be substituted as discovery is made. **JOHN DOE** is liable for his negligent actions or omissions, which constitute medical malpractice, and resulted in damages to the plaintiffs. **UNNAMED DEFENDANT's** liability arises from the conjugal partnership she and her spouse **JOHN DOE** form because his negligent actions or omissions were conducted as part of his commercial and professional activity, which is presumed to be made for the benefit of the conjugal partnership form between the two.

23.     **XYZ INSURER** is a for-profit corporation authorized to conduct business in Puerto Rico with an insurance policy issued in favor of **JOHN DOE**. Information regarding the address and phone number of **XYZ INSURER** is currently unknown. **XYZ INSURER** could be liable by virtue of said policy for Defendant **JOHN DOE'S** negligent acts or omissions. The name **XYZ INSURER** shall be duly substituted as discovery in the instant case progresses. Under Puerto Rico´s law, this insurance company can be sued directly, under the "direct action" provision. *See* 26 LPRA sec. 2003, et seq.

## IV. <u>FACTS</u>

24.     G.M.M.S., is the Daughter of Grace and still a minor. She was born on January 29, 2004. She suffers from epilepsy since she was one and a half (1/2) years old. In April 2016 she was diagnosed with hypoxic encephalitis. For that reason, G.M.M.S. uses a feeding tube or

gastrotomy both for feeding and receiving her medicines.

25.    On the morning of October 19ᵗʰ 2016, G.M.M.S. pulled out her feeding tube. Immediately after she noticed what happened, Grace called an ambulance using the emergency system number 9-1-1. An ambulance arrived several minutes later and G.M.M.S. was taken to the emergency room of Hospital Pavia Arecibo, which is part of **METRO PAVIA HEALTH SYSTEM, INC.** By knowledge or belief, it is affirmed that the emergency room of Hospital Pavia Arecibo is administered by **EMERGENCY ROOM CORPORATION XYZ,** or by Defendant Metro Pavia Health System, Inc. Once she arrived at the emergency room accompanied by her mother Grace and her grandfather Gregorio, G.M.M.S. was rushed into the attention of defendant Dr. Jimenez, who evaluated her. By knowledge or belief, it is affirmed that Dr. Jimenez is an employee of Emergency Room Corporation XYZ, or an employee of, or have privileges to practice his profession in, Hospital Pavia Arecibo.

26.    At or around 9:30 am, defendant Dr. Padilla arrived at the emergency room and, together with Dr. Jimenez, assessed G.M.M.S.'s condition and ordered that G.M.M.S. be transferred to a cubicle within the emergency room. By knowledge or belief, it is affirmed that Dr. Padilla was an employee of Emergency Room Corporation XYZ, or an employee of, or had privileges to practice his profession in, Hospital Pavia Arecibo.

27.    About fifteen (15) minutes after G.M.M.S. was transferred into a cubicle, Dr. Jimenez came out and informed Grace that he and Dr. Padilla repositioned the feeding tube and that "everything was fine". Worried about her daughter's condition, Grace asked Dr. Jimenez if X-rays could be ordered to make sure the gastrostomy was in the correct place. He affirmed to Grace that that would not be necessary because the tube was correctly placed. He also informed Grace that they ordered an antibiotic, *Rocephin*, to prevent any possible infection.

28.     Minutes later, Dr. Padilla informed Grace that, since there were no gastrostomy tubes of the correct size available in the hospital, the same tube that G.M.M.S. pulled out earlier that day was reused. Dr. Padilla told Grace that everything was fine with her daughter and that they were just waiting for the antibiotic to be administered so that G.M.M.S. could be discharged from the hospital.

29.     After the replacement procedure, G.M.M.S. was transferred to a regular cubicle within the emergency room. Once there, Grace tried to administer G.M.M.S.'s epilepsy medicines using the gastrostomy, as she used to do regularly with her daughter. However, Grace and her father, Gregorio, noticed that there was something odd because the medicine was returning trough the feeding tube.

30.     They immediately called a nurse from the emergency room and notified her about what was happening. The nurse informed the situation to Dr. Padilla, who was in a different cubicle with another patient. However, several minutes after the failed attempt, the medicine finally gets its way through the feeding tube. This was informed by Grace to the nurse who, again, informed the situation to Dr. Padilla. Despite what happened and the odd event with the gastrostomy, Dr. Padilla never come back to G.M.M.S.'s cubicle to evaluate her or check that all was as it should. Shortly after the *Rocephin* was finished, G.M.M.S. was discharged from the hospital without any further treatment or indication.

31.     Once they returned home, Grace connected G.M.M.S. to the feeding machine using the recently repositioned gastrostomy. This was a regular procedure that Grace was used to do with her daughter since she is her primary caregiver. At or around 8:00 pm of that same day October 19th, Grace went to check how G.M.M.S. was doing and to clean the area where the tube was placed through her abdomen. When Grace checked on her daughter, she noticed that the left

side of G.M.M.S.'s abdomen was red, hot and swollen. In addition, she found that the pad that was covering the wound had milk in it. For that reason, Grace disconnected the feeding machine immediately and called 9-1-1.

32.     An ambulance arrived several minutes after the call was placed. The ambulance was property of AMBULANCE SERVICE XYZ. The paramedics, who are employees of AMBULANCE SERVICE XYZ, evaluated G.M.M.S. and took her vitals. However, despite the information given to them by Grace, the paramedics decided that the child was in good shape and that there was no need to take her to the emergency room. Regarding the swollen area in G.M.M.S.'s abdomen, the paramedics told Grace that it was ok, but that if it became dark, the child should be taken to the hospital. The decision made by the employees of AMBULANCE SERVICE XYZ was negligent and provoked damages to G.M.M.S., since they had all the criteria necessary to transfer her to an emergency room but did not.

33.     Grace felt unconvinced about what she was told. G.M.M.S. aspect was not good, and she knew that something was not working the way it was supposed to work. When the paramedics left her house, she decided to call 9-1-1 again.

34.     A second ambulance arrived several minutes after she called the emergency system. The paramedics evaluated G.M.M.S.'s condition and abdomen and informed Grace that the area looked too swollen and red and that the child should be taken to the emergency room again.

35.     G.M.M.S. was taken to Hospital Pavia Arecibo's emergency room. At her arrival, she had erythema around the site of the gastrostomy tube, swelling and abdominal distention. This time, the child was received and evaluated by Defendant Dr. Rodriguez. After his evaluation of G.M.M.S.'s swollen abdomen, he ordered X-rays to be done and instructed that the gastrostomy should not be used until the X-rays results were available. By knowledge or belief, it is affirmed

13

that Dr. Rodriguez is an employee of Emergency Room Corporation XYZ, or an employee or independent contractor with privileges to practice his profession at Hospital Pavia Arecibo.

36.     Grace informed at that moment to Dr. Rodriguez that her daughter had epilepsy, and that she needed her medications. She asked Dr. Rodriguez how they planned to administer the medications to G.M.M.S. since the feeding tube could not be used. However, Dr. Rodriguez did not give any option or placed any order regarding this matter. Because of this, Grace proceeded to administer the medication to G.M.M.S. very carefully using a dropper ("*gotero*").

37.     Grace and her daughter were left alone in the emergency room for several hours, even without IV fluids. During the early hours of October 20th 2016, Grace informed the nurses at the emergency room that G.M.M.S. was very pale and was sweating a lot. In addition, Grace told the nurses that when she changed her daughter's diaper, she noticed that the urine was very dark.

38.     The nurses addressed Grace's complains telling her that G.M.M.S. did not have a fever. Unconvinced, Grace requested that the temperature be taken using a rectal thermometer. When the nurses complied with Grace's request, they learned that G.M.M.S. temperature was 42.1 Celsius. The nurses proceeded to open an IV line and administer fluids to G.M.M.S. In addition, the nurses administered a rectal suppository to G.M.M.S., but did not gave her any other medication or stabilization treatment as required by law.

39.     The negligent and faulty screening performed by Dr. Rodriguez and the medical personnel of Hospital Pavia Arecibo, did not conform with the hospital's established protocol for the screening of patients with an ongoing emergency or medical condition, real or suspected, such as the one presented by G.M.M.S.

40.     At or around 6:00 am in the morning of October 20th 2016, the X-rays results became available. Dr. Rodriguez then informed Grace that the feeding tube was indeed misplaced.

As a matter of fact, the X-rays revealed that the tube was in G.M.M.S.'s mid upper abdomen. Dr. Rodriguez told Grace that he could not intervene because that was not his area of expertise, and that he would order a transfer to a different hospital in San Juan's metropolitan area.

41.     Finally, after more than eight (8) hours after her arrival to Hospital Pavia Arecibo's emergency room, G.M.M.S. was transferred via ambulance to the University Pediatric Hospital, Dr. Antonio Ortiz, in Centro Medico, Rio Piedras. The ambulance was property of **AMBULANCE SERVICE ABC,** and the paramedics who transferred G.M.M.S. were employees of that ambulance service company. During the transfer, the paramedics did not follow the established protocols and did not notice that the child was not properly stabilized prior to her transfer. As a matter of fact, G.M.M.S. was in critical condition when she was transferred to Centro Medico, and Dr. Rodriguez and the medical staff of Hospital Pavia Arecibo did not stabilize the child's condition prior to transferring her to the new medical facility.

42.     G.M.M.S. arrived at Centro Medico in septic shock. Upon her arrival, the doctors asked Grace if G.M.M.S. was usually that pale. Grace answered in the negative and explained what happened at Hospital Pavia Arecibo. The emergency room doctor that received G.M.M.S. explained to her mother that her blood pressure was very low and that a jugular vein access was ordered to administer fluids and medicines. The doctor explained to Grace that they will do everything at their hands to save her daughter but, due to the critical condition in which she arrived, they could not guarantee the outcome. Grace felt that her whole world was taken from her in that exact moment.

43.     Upon her arrival, G.M.M.S. was rushed into the pediatric intensive care unit (PICU) of the hospital, were she was admitted with a subcutaneous abscess with connection to gastrostomy tract extending into the abdominal cavity. She required three (3) liters of saline solution, inotropic

agents [dopamine] and wide spectrum antibiotics to resuscitate.

44.     The gastrostomy feeding tube was removed on October 21st, 2016. She remained admitted into the PICU unit of the hospital receiving treatment with antibiotics due to the infection provoked by the misplaced tube in her abdominal cavity. On November 10, 2016, G.M.M.S. had open gastrostomy performed and started on enteral feeding. She responded well to the antibiotics and on November 15th, 2016, she was discharged from Centro Medico.

45.     The negligent acts and omissions of Dr. Jimenez and Dr. Padilla, who are employees or have privileges to practice their profession at Hospital Pavia Arecibo, when they replaced G.M.M.S.'s feeding tube, caused her an infection in her abdominal cavity. In addition, when G.M.M.S. arrived at Pavia's hospital's emergency room for the second time, Dr. Rodriguez's negligent acts and omissions caused G.M.M.S. not to be transferred to an appropriate medical facility in a timely fashion, causing her to develop septic shock and a critical situation in which her life was put at great risk.

46.     Even when the critical condition of G.M.M.S. was evident to Dr. Rodriguez and the medical personnel at Hospital Pavia Arecibo, they did not stabilize the patient prior to her transfer, causing her condition to greatly deteriorate during her trip to Centro Medico. The paramedics of the ambulance service, **AMBULANCE SERVICE ABC,** negligently accepted the patient without taking the necessary precautions and without making sure that G.M.M.S. was medically stabilized before her transfer.

47.     All these events caused great physical pain, sufferings and mental anguish to G.M.M.S., to her mother Grace and to her grandfather Gregorio. G.M.M.S. arrived at Centro Medico in septic shock and spent twenty-one (21) days in the pediatric intensive care unit. Her life couldn't be guaranteed at the moment of her arrival to Centro Medico.

48.     Even today, the trauma and the related sequels that Defendants caused to the Plaintiffs are still present. They suffered every day they spent with G.M.M.S. at PICU in Centro Medico, being suffering witness of the tragedy that surrounded them that endangered G.M.M.S.'life. The memories of those sad days will forever dwell in their minds.

## V. <u>COUNTS</u>

### FIRST COUNT: EMTALA VIOLATIONS

49.     The allegations contained in the paragraphs above are reaffirmed and reproduced as if alleged herein.

50.     The Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. §1395 dd et seq., states as follows: "Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate." 42 U.S.C. §1395 dd(d)(2)(A).

51.     Defendant Hospital Pavia Arecibo is owned and operated by Metro Pavial Health System, Inc., and is a "participating hospital" which operates an Emergency Department, as defined in the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. §1395 dd(e)(2).

52.     EMTALA imposes on participant hospitals obligations regarding screening, treatment and stabilization that are applicable to every patient that arrives to an emergency room, disregarding his or her payment capacity or insurance. *See*, <u>Cooper v. Gulf Breeze Hospital</u>, 839 F. Supp. 1538 (N.D. Florida 1993). The statute expressly provides that the provisions of the law

apply to all patients "whether or not eligible for benefits under this subchapter". *See,* 42 U.S.C. 1395dd(a). *See in addition*, Gatewood v. Washington Healthcare Corporation, 933 F.2d 1037 (D.C.C. 1991) [Though the Emergency Act's legislative history reflects an unmistakable concern with the treatment of uninsured patients, the Act itself draws no distinction between persons with and without insurance].To this end, EMTALA imposes duties on covered facilities to: (a) provide an "appropriate medical screening examination" for those who come to an emergency room seeking treatment, and (b) provide, in certain situations, "such further medical examination and such treatment as may be required to stabilize the medical condition." 42 U.S.C. §1395 dd(a), (b)(1)(A); see López-Soto v. Hawayek, 175 F.3d 170, 172-173 (1st Cir. 1999). (Emphasis added).

53. EMTALA creates several duties for all hospitals that participate in Medicare. **First**, for any individual that "comes to the emergency department" and request treatment, the hospital must "provide for an appropriate medical screening examination … to determine whether or not an emergency medical condition … exists." 42 U.S.C. § 1395dd(a). *See* Moses v. Providence Hosp. and Medical Centers, Inc., 561 F.3d 573, 579 (6th Cir. 2009); *Correa*, supra, at 1190. **Second**, if "the hospital determines that the individual has an emergency medical condition, the hospital must provide either (A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilized the medical condition, or (B) for transfer of the individual to another medical facility [.]". 42 U.S.C., at §1395dd(b). Moses v. Providence Hosp. and Medical Centers, Inc., supra, at 579; *Correa*, supra, at 1190. That means that a participating hospital must determine whether an "emergency medical condition" exists, and if the hospital believes such a condition exists, **it must provide treatment to "stabilize" the patient**. *See* Moses, supra; citing Thornton v. Sw. Detroit Hosp., 895 F.2d 1131, 1134 (6th Cir. 1990). (Emphasis ours).

54.     This Honorable District Court and the Court of Appeals for the first Circuit, have recognized that the duty to stabilize a patient goes beyond the admittance of a patient to a hospital. For example, in *Lopez-Soto v. Hawayek*, 175 F.3d 170 (1st Cir.1999), the First Circuit explained that the plain language in the statute "works no fatuity".[1]  The Court said that it makes good sense to restrict subsection (a) screenings to emergency room arrivals, but, by contrast, "the broader, hospital-wide sweep of subsection (b) makes equally good sense. While screening is arguably the key to ensuring the health of itinerants who arrive at an emergency room, **stabilization is arguably the key to ensuring the health of those already admitted to the hospital who develop emergency medical conditions**".[2] Likewise, this Honorable Court in *Ortiz v. Mennonite Gen. Hosp*., 106 F. Supp. 2d 327, 332 (D.P.R. 2000) explained that "[a] hospital´s duty is "to provide such medical treatment of the condition as may be necessary to assure, within a reasonable medical probability, that no material deterioration of the condition is likely to result from or occur." 42 U.S.C. §1395dd(e)(3)(A). **The duty to stabilize is therefore greater than the duty to screen**". (Emphasis ours).

55.     Hospital Pavia Arecibo and his medical staff and/or medical personnel incurred in an egregious delay in procuring an appropriate screening and treatment for G.M.M.S., despite knowing that her serious medical condition required prompt treatment or transfer to an appropriate medical facility. This delay, which effectively denied G.M.M.S. proper emergency treatment, had as a direct consequence that the child developed septic shock. In addition, Hospital Pavia Arecibo and its medical staff and/or medical personnel did not give the necessary treatment to G.M.M.S. in order to stabilize her condition prior to transfer her to a different medical facility, thus violating

---

[1] Id., at page 175.

[2] Id. (Emphasis ours).

EMTALA's stabilization and transfer provision.

56.     The EMTALA violations committed by Defendant Hospital Pavia Arecibo, were the proximate cause of G.M.M.S.'s critical medical situation which eventually developed into a septic shock that nearly ended her life.

## SECOND COUNT

## SUPPLEMENTAL JURISDICTION OVER PR'S CIVIL CODE ART. 1802 CLAIMS

57.     The allegations contained in the paragraphs above are reaffirmed and reproduced as if alleged herein.

58.     Article 1802 of the Puerto Rico Civil Code provides a general statute for tortious actions or omissions. P.R. Laws Ann. Tit. 31 §5141.

59.     This article provides, in pertinent part, the following: "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity". P.R. Laws Ann. Tit. 31 §5141.

60.     According to the facts above stated, G.M.M.S.'s sufferings and critical medical condition resulted from the flagrant lack of medical expertise of Dr. Jimenez, Dr. Padilla, Dr. Rodriguez and Dr. John Doe, all of whom intervened —along with Hospital Pavia Arecibo's healthcare staff and medical personnel employed by Emergency Room Corporation XYZ— in the negligent treatment, evaluation and transfer of G.M.M.S. between October 20th and 21st 2016.

61.     Dr. Jimenez and Dr. Padilla, along with Dr. John Doe and the medical staff of Hospital Pavia Arecibo and/or the medical personnel of Emergency Room Corporation XYZ, showed lack of medical expertise when negligently repositioned the gastrostomy in G.M.M.S.'s abdomen without exercising due care. Dr. Jimenez and Dr. Padilla, negligently used the same

feeding tube that G.M.M.S. had pulled out early that day, which is not an accepted medical practice. This situation, plus the fact that Dr. Jimenez and Dr. Padilla did not check if the feeding tube was correctly in place, ultimately caused an abdominal infection in G.M.M.S.

62.    In addition, Dr. Rodriguez' fault and negligent acts when he received and evaluated G.M.M.S. triggered her transfer to a different medical facility without being properly stabilized first. Dr. Rodriguez did not make a good screening or medical assessment to determine if G.M.M.S. was facing and emergency, despite her obvious signs of illness. Dr. Rodriguez, along with Dr. John Doe and the medical staff of Hospital Pavia Arecibo and/or the medical personnel of Emergency Room Corporation XYZ, abandoned G.M.M.S. in the emergency room and did not provide her even the most elementary medical treatment for several hours after her arrival.

63.    Defendants Dr. Jimenez, Dr. Padilla, Dr. Rodriguez and Dr. John Doe did not comply with the rigorous standards of the medical profession in Puerto Rico. Their lack of expertise, fault and negligent actions or omissions during the process of evaluating and treating G.M.M.S. and their lack of response to her rapidly deteriorating health - among other possible reasons to be discovered trough the discovery of evidence -, are the proximate cause of all damages suffered, and to be suffered, by Plaintiffs G.M.M.S., Grace Santiago Rivera and Gregorio Santiago Cruz.  Dr. Jimenez, Dr. Padilla, Dr. Rodriguez and Dr. John Doe are jointly liable for all harm experienced by the Plaintiffs. Márquez Vega v. Martínez Rosado, 16 P.R. Offic. Trans. 487 (1985).

64.    The faulty and negligent actions or omissions of Dr. Jimenez, Dr. Padilla, Dr. Rodriguez and Dr. John Doe, together with Hospital Pavia Arecibo healthcare staff and/or Emergency Room Corporation XYZ medical personnel, caused G.M.M.S. a critical medical condition that evolved into a septic shock and the resulting damages suffered by all Plaintiffs. As will be shown, the care and treatment offered to G.M.M.S. constituted not only a direct violation

of the Emergency Medical Treatment and Active Labor Act (EMTALA), but it also did not comply with the rigorous standards expected from the medical profession in Puerto Rico, which entails a violation under article 1802 of Puerto Rico's Civil Code.

65.     The treatment and techniques applied by Defendants during their treatment of G.M.M.S. were not up to par with the minimum standard of care which, "recognizing the modern means of communication and education, . . . meets the professional requirements generally acknowledged by the medical profession." Lama v. Borras, 16 F.3d 473, 478 (1st Cir. 1994) (quoting Oliveros v. Abréu, 101 P.R. Dec. 209, 226 (1973)).

66.     As a direct consequence of and proximately caused by the faulty and negligent actions or omissions of all Defendants, which caused G.M.M.S. critical medical condition and septic shock, Plaintiffs G.M.M.S., her mother Grace and her grandfather Gregorio, have suffered and will suffer from intense emotional anguish and pain and suffering.

**THIRD COUNT**

**SUPPLEMENTAL JURISDICTION OVER PR'S CIVIL CODE ART. 1803 CLAIMS**

67.     The allegations contained in the paragraphs above are reaffirmed and reproduced as if alleged herein.

68.     Vicarious liability arises from Article 1803 of the Puerto Rico Civil Code, which provides, in pertinent part, that: "[t]he obligation imposed by §5141 of this title is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible." P.R. Laws Ann. Tit. 31 §5142. In regards to the obligation to respond for acts of its employees or agents, the article states in its fourth (4th) paragraph that: "[o]wners or directors of an establishment or enterprise are likewise liable for any damages caused by their employees in

the service of the branches in which the latter are employed or on account of their duties." P.R. Laws Ann. Tit. 31 §5142.

69. The Puerto Rico Supreme Court has established that the liability of employers for acts or omissions of its employees is, strictly speaking, vicarious, which means that employers are liable for the fault of others. They cannot be spared of their accountability by demonstrating that the employee was diligently selected, trained, and supervised by the employer.

70. However, even if the employer proves, throughout the proceedings, that physicians are not employees of Hospital Pavia Arecibo, the latter would still be liable to the plaintiffs because the Puerto Rico Supreme Court has created other categories of vicarious liability in the context of healthcare service providers.

71. In *Márquez Vega,* the Puerto Rico Supreme Court distinguished four categories of physicians for whose services the hospital—or physician granted a franchise—will be held liable. Writing for the Court, Justice Rebollo López states:

> Under the first alternative, that is, when a person goes directly to a hospital for medical treatment and the hospital "provides" the physicians who treat him, we favor the joint liability of hospital and private physician for the act of malpractice *(Omitted citation)*. Within this factual framework, we hold that it makes no difference whether the attending physician is a hospital employee or not, or a physician granted a "franchise" to offer his specialized medical services to the hospital patients, or a physician belonging to the hospital staff and called in for consultation to treat the patient, etc. *(Omitted citation)*. Márquez Vega v. Martínez Rosado, 16 P.R. Offic. Trans. 487 (1985).

72. The Puerto Rico Supreme Court reasoned that proceeding in this manner and holding the hospital liable was appropriate from a public policy perspective, for the patient entrusted the hospital with his or her health and went to that particular institution. To a certain degree, the hospital is guaranteeing that said physician is competent and fit to render medical assistance. *Id*. at 497.

73.     Lastly, even if Defendants Dr. Jimenez, Dr. Padilla, Dr. Rodriguez and Dr. John Doe are only physicians who were granted a franchise to operate and provide medical services for Hospital Pavia Arecibo or for Emergency Room Corporation XYZ, the Puerto Rico Supreme Court has also held hospitals liable for injuries that contractors cause to those who attend the hospital in search of medical services.

74.     The Puerto Rico Supreme Court imposed responsibility upon physicians granted a franchise to provide medical services in the hospital's facilities, holding the hospital jointly liable as well.  *See*, Sagardía de Jesús v. Hospital Auxilio Mutuo, 177 DPR 484 (2009).  This case sets forth that when a franchise includes healthcare services such as radiology, anesthesiology and emergency room services, among others, the hospital and physician with a privilege to provide medical services in said institution both respond jointly.

75.     Furthermore, the Puerto Rico Supreme Court stated that the liability of a healthcare contractor "…is not vicarious, but direct, primary and independent, directed towards the patient. This liability cannot be avoided by employing independent contractors, because it is the hospital who provides patients with service and physicians. Therefore, both will be jointly liable for the negligent acts committed.

76.     Defendants Dr. Jimenez, Dr. Padilla, Dr. Rodriguez and Dr. John Doe, as well as the healthcare staff who participated in G.M.M.S.' care between October 20 – 21st, 2016, were all employed by Hospital Pavia Arecibo or Emergency Room Corporation XYZ, and/or were physicians granted a franchise to provide medical services in the hospital's facilities. Therefore, Hospital Pavia Arecibo and Emergency Room Corporation XYZ are vicariously liable for all damages caused to Plaintiffs as a result the fault and/or negligence of Dr. Jimenez, Dr. Padilla, Dr. Rodriguez and Dr. John Doe. The healthcare professionals employed by Hospital Pavia Arecibo

and/or Emergency Room Corporation XYZ did not comport with the high standards of the medical profession in Puerto Rico. Thus, Hospital Pavia Arecibo and/or Emergency Room Corporation XYZ are vicariously liable pursuant to Article 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. Tit. 31 §5141. Furthermore, Dr. Jimenez, Dr. Padilla, Dr. Rodriguez and Dr. John Doe fall into one (1) of the four (4) categories the Puerto Rico Supreme Court established in *Márquez Vega* for whose acts a hospital must be held accountable.

77.     As a direct consequence of and proximately caused by the faulty and negligent actions or omissions of Dr. Jimenez, Dr. Padilla, Dr. Rodriguez and Dr. John Doe, together with Hospital Pavia Arecibo and/or Emergency Room Corporation XYZ's healthcare staff, which caused G.M.M.S. a critical condition that ultimately developed into a septic shock, Plaintiffs G.M.M.S., Grace Santiago Rivera and Gregorio Santiago Cruz have suffered and will continue to suffer from intense physical and emotional anguish and pain and suffering.

78.     In addition, the ambulance service personnel and or paramedics of Defendant **AMBULANCE SERVICE ABC,** negligently accepted the patient without taking the necessary precautions and without making sure that G.M.M.S. was properly stabilized before her transfer, thus participating and causing more damages to the Plaintiffs. This negligent acts or omissions did not comport to the medical standards applicable to ambulance services in Puerto Rico. Thus, **AMBULANCE SERVICE ABC** is vicariously liable to all Plaintiffs under Article 1803 of Puerto Rico's Civil Code.

79.     Co-defendant **AMBULANCE SERVICE XYZ** is vicariously liable to all Plaintiffs since its employees negligently refused to accept and transport minor G.M.M.S. to an emergency room, despite she was very ill at that moment and needed urgent medical evaluation and treatment. This improper action caused damages to G.M.M.S. who needed to wait until a

different ambulance service arrived at her home and transported her to Hospital Pavia Arecibo. Thus, **AMBULANCE SERVICE XYZ** is vicariously liable to all Plaintiffs under Article 1803 of Puerto Rico's Civil Code.

80.     Defendant **INSURANCE COMPANY "D"** is an insurance company that is authorized under the laws of the Commonwealth of Puerto Rico to sell insurance policies to hospitals. **INSURANCE COMPANY "D"** has issued a policy in favor of Hospital Pavia Arecibo and/or Metro Pavia Health System, Inc. that covers the damages that the negligent and/or faulty actions or omission of its personnel have caused Plaintiffs. Therefore, **INSURANCE COMPANY "D"** is liable to Plaintiffs for all the damages alleged in this Complaint.

81.     Defendants **INSURANCE COMPANIES "A", "B" AND "C"**, are domestic corporations authorized under the laws of the Commonwealth of Puerto Rico to sell insurance policies to health care practitioners. **INSURANCE COMPANIES "A", "B" AND "C"** have issued a policy in favor of Dr. Jimenez, Dr. Padilla and Dr. Rodriguez that covers the damages that their negligent and/or faulty actions or omission have caused Plaintiffs. Therefore, **INSURANCE COMPANIES "A", "B" AND "C"** are liable to Plaintiffs for all the damages alleged in this Complaint.

82.     Defendant **INSURANCE COMPANY "E"** is an insurance company that is authorized under the laws of the Commonwealth of Puerto Rico to sell insurance policies to health care and ambulance service providers.  **INSURANCE COMPANY "E"** issued a policy in favor of **AMBULANCE SERVICE ABC** that covers the damages that the negligent and/or faulty actions or omission of its personnel have caused Plaintiffs.  Therefore, **INSURANCE COMPANY "E"** is liable to Plaintiffs for all the damages alleged in this Complaint.

83.     Defendant **INSURANCE COMPANY "F"** is an insurance company that is

authorized under the laws of the Commonwealth of Puerto Rico to sell insurance policies to health care and emergency room service providers.  **INSURANCE COMPANY "F"** has issued a policy in favor of **EMERGENCY ROOM CORPORATION XYZ** that covers the damages that the negligent and/or faulty actions or omission of its personnel have caused Plaintiffs. Therefore, **INSURANCE COMPANY "F"** is liable to Plaintiffs for all the damages alleged in this Complaint.

84.     Defendant **INSURANCE COMPANY "G"** is an insurance company that is authorized under the laws of the Commonwealth of Puerto Rico to sell insurance policies to health care and ambulance service providers.  **INSURANCE COMPANY "G"** has issued a policy in favor of **AMBULANCE SERVICE XYZ** that covers the damages that the negligent and/or faulty actions or omission of its personnel have caused Plaintiffs. Therefore, **INSURANCE COMPANY "G"** is liable to Plaintiffs for all the damages alleged in this Complaint.

85.     Defendant **XYZ INSURER** is an insurance company that is authorized under the laws of the Commonwealth of Puerto Rico to sell insurance policies to health care practitioners. **XYZ INSURER** has issued a policy in favor of **DR. JOHN DOE** that covers the damages that his negligent and/or faulty actions or omission have caused Plaintiffs.  Therefore, **XYZ INSURER** is liable to Plaintiffs for all the damages alleged in this Complaint.

## VI. DAMAGES

86.     The allegations contained in the paragraphs above are reaffirmed and reproduced as if alleged herein.

87.     The damages caused by all Defendants, liable *in solido* for their fault and negligence, are detailed below.

88.     As a direct result of, and proximately caused by Defendant Hospital Pavia Arecibo and/or Metro Pavia Health System, Inc.'s violation of the Emergency Medical Treatment and Active Labor Act (EMTALA), plus Defendants Dr. Jimenez, Dr. Padilla, Dr. Rodriguez and Dr. John Doe's negligent acts and omissions and medical malpractice which resulted in the critical health condition of G.M.M.S. that ultimately developed in septic shock, has caused G.M.M.S. to suffer, and will continue to suffer, severe physical and mental anguish and pain and suffering. Plaintiff G.M.M.S.' damages are estimated in an amount not less than $500,000.00.

89.     As a direct result of, and proximately caused by Defendant Hospital Pavia Arecibo and/or Metro Pavia Health System, Inc.'s violation of the Emergency Medical Treatment and Active Labor Act (EMTALA), plus defendants Dr. Jimenez, Dr. Padilla, Dr. Rodriguez and Dr. John Doe's negligent acts and omissions and medical malpractice which resulted in the critical health condition of G.M.M.S. that ultimately developed in septic shock, has caused plaintiff Grace Santiago Rivera to suffer, and will continues to suffer, severe mental anguish and pain and suffering. Plaintiff Grace Santiago Rivera's damages are estimated in an amount not less than $100,000.00.

90.     As a direct result of, and proximately caused by defendant Hospital Pavia Arecibo and/or Metro Pavia Health System, Inc.'s violation of the Emergency Medical Treatment and Active Labor Act (EMTALA), plus Defendants' Dr. Jimenez, Dr. Padilla, Dr. Rodriguez and Dr. John Doe's negligent acts and omissions and medical malpractice which resulted in the critical health condition of G.M.M.S. that ultimately developed in septic shock, Plaintiff Gregorio Santiago Cruz, G.M.M.S.'s grandfather, has suffered, and will continue to suffer, severe mental anguish and pain and suffering. Plaintiff Gregorio Santiago Cruz's damages are estimated in an amount not less than $100,000.00.

91.      Trial by jury is hereby demanded.

**WHEREFORE**, For the foregoing reasons, this Court should grant Plaintiffs' Complaint:

1.      Entering judgment to the effect that the acts complained of herein are in violation of the Emergency Medical Treatment and Active Labor Act (EMTALA) and the laws of the Commonwealth of Puerto Rico;

2.      Granting all the relief requested in this Complaint and awarding Plaintiffs damages for their mental anguish and pain and suffering in an amount no less than seven hundred thousand dollars ($700,000.00) which breaks down as follows:

   a) To Plaintiff G.M.M.S., no less than $500,000.00 for all damages suffered;

   b) To Plaintiff Grace M. Santiago Rivera, no less than $100,000.00 for all damages suffered;

   c) To Plaintiff Gregorio Santiago Cruz, no less than $100,000.00 for all damages suffered;

3.      Awarding Plaintiffs, the costs of this action and reasonable attorney's fees;

4.      Awarding Plaintiffs prejudgment interest; and

5.      Granting Plaintiffs such other and further relief as this Honorable Court deems appropriate.

I **HEREBY CERTIFY** that on this same day, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide notice to all parties involved in this case.

**RESPECTFULLY SUBMITTED**

In San Juan, Puerto Rico, this 29th day of November 2017.

*s/* Humberto Guzmán-Rodríguez
**HUMBERTO GUZMAN, ESQ.**
USDC-PR 128308
**GUZMAN & RODRIGUEZ-LOPEZ LAW OFFICE**
PMB 733
1353 Luis Vigoreaux Avenue
Guaynabo, PR 00966
Tel. (787) 767-7502
Fax (787) 200-7399
Email: hguzman@grllaw.net